UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| MARIO DE VERA,<br><br>              Plaintiff,<br>     v.<br><br>UNITED AIRLINES, INC.,<br><br>              Defendant.<br>_____ | No. C 12-5644 LB<br><br>**ORDER GRANTING UNITED AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 52] |

# INTRODUCTION

Plaintiff Mario De Vera, who is representing himself, sued his former employer, United Airlines, Inc., alleging breach of contract and breach of fiduciary duty after United modified the travel benefits it provided him under the terms of an "early out" employee buyout program and because United failed to disclose the fact that he would not be considered a retiree if he accepted the buyout. *See* Complaint, ECF No. 1 at 9; Opp'n, ECF No. 63. United moved for summary judgment. *See* Motion, ECF No. 52. For the reasons discussed below, the court GRANTS United's summary judgment motion.

# STATEMENT[1]

## I. MR. DE VERA'S EMPLOYMENT WITH UNITED

Mr. De Vera worked as a mechanic for United from April 2, 1990 to October 1, 2008. JSOF #1;

---

[1] The facts are taken from the undisputed parts of the parties' Joint Statement of Facts ("JSOF"), ECF No. 55-1, and from documents attached to the parties' moving papers.

*see* De Vera Decl. ¶ 1, ECF No. 64. Mr. De Vera was a member of and represented by a union throughout his employment with United. *See* JSOF #2.[2] Mr. De Vera was 47 when he left United under an "early out" program that is discussed below. *See* JSOF #15.

## II. MR. DE VERA'S TRAVEL BENEFITS

During Mr. De Vera's employment, United maintained a travel pass program under which it provided free or reduced cost travel on a space available basis to employees and retirees. JSOF #19. According to Mr. De Vera, when he was hired, he was advised that when he retired he would receive unlimited "BP8A passes"[3] if he had less than 25 years of service and "BP6" if he had more than 25 years of service. De Vera Decl. ¶ 5.

Beginning in the mid-1990's, United distributed its travel pass policy to employees in hard copy in a manual known as "Series 10," which contained United's "regulations," as follows:

**PURPOSE OF SERIES 10**

The purpose of Regulations Series 10 is to set forth the Company's policies and procedures with respect to pass and reduced fare travel by its employees, retirees, and their eligible family members. These Regulations also list other air carriers with whom United has reciprocal agreements and describe the off-line travel privileges which these agreements extend to the employees of each airline.

Regulations Series 10 combines the Business, Pleasure and Emergency travel chapters formerly contained in Series 5 and Series 15, respectively, and supersedes any and all information presented in these or any other publications issued prior to the publication of this manual. The material in this manual is intended exclusively for the employees of United Airlines.

The policies and procedures outlined in Series 10 do not, nor can they, anticipate every possible circumstance. In unusual situations interpretation may be necessary and/or exception may be warranted. Such requests should be directed by local management to the appropriate People Services office. Other questions, comments, or suggestions about the material in this manual should also be directed to People Services.

---

[2] The parties' undisputed fact is that Plaintiff "was 'represented by' the International Association of Machinists Union ('IAM')." JSOF #2. The parties apparently agree that there were three unions in succession. The first was the IAM, which was succeeded by the Aircraft Mechanics Fraternal Association ("AMFA") in its representation of eligible United employees, and then the International Brotherhood of Teamsters ("IBT") succeeded AMFA in the Spring of 2008. *See* Delhommeau Decl. ¶ 2, ECF No. 54; Devera Dep. 22:8-12, Agenbroad Decl. Ex. C, ECF No. 55-2 at 13. The identify of the union is not relevant to this order.

[3] Based on the context, BP8A and BP6 passes appear to permit travel on United flights.

C 12-5644 LB
ORDER                                       2

**SCOPE OF SERIES 10**

These Regulations do not constitute a contract between United Air Lines, Inc. and its employees, either by themselves or in conjunction with any other material which may have been or which may be distributed to employees, and they are subject to unilateral change by the Company. Where union agreements differ from the policies and procedures in this manual, the former will take precedence.

**AMENDMENT OF SERIES 10**

The Company reserves the right to amend, delete, or modify policies and provisions included in Series 10, with or without notice. For this reason the manual is in a loose-leaf format that facilitates updating as necessary by replacing old, superseded pages with new pages when a revision is received.

*See* JSOF #20; Agenbroad Decl. Ex. I (United Airlines Series 10 "Purpose and Scope" dated September 1, 1996).[4] Mr. De Vera testified that he understood that he "had the ability to go ask and look at the company's regulations" if he wanted to do so. JSOF #21.

According to United, in 2004 and 2006, it distributed a series of brochures to employees summarizing its travel pass policies. JSOF #22; Agenbroad Decl. Exs. J-L.[5] The three brochures submitted by United each include an express disclaimer reserving for United the right to amend, delete, or modify policies and provisions related to travel passes with or without notice. *See* Agenbroad Decl. Ex. J at 4, ECF No. 55-5 at 20; *id.* Ex. K at 3, ECF No. 55-5 at 24; *id.* Ex. L at 3, ECF No. 55-5 at 29. Mr. De Vera states that he does not remember whether he saw those brochures, but he testified at his deposition that he believed he had seen something similar before. *See* JSOF #22; De Vera Dep. 58:12-62:23.

During the course of Mr. De Vera's employment, United changed the cost of space available

---

[4] The excerpt is listed in the "undisputed" facts, and the document is attached to the declaration. The dispute that Mr. De Vera raises is that the "Company Series 1–3, Pass Travel Regulation does not have a disclaimer stating that 'the Company reserves the right to amend, delete, or modify policies and provisions contained in Series 10, with or without Notice." JSOF #20. His argument also is that "he asked why the company did not put that warning in the terms of the 'Early Out' in order to make him aware of the disclaimer." JSOF #20 (Plaintiff's dispute). But the document attached to the declaration does contain the disclaimer, and Mr. De Vera does not dispute the document's authenticity or provide any other copies of the Series 10 document. At the hearing, he acknowledged the document's authenticity.

[5] Mr. De Vera does not dispute that United distributed these brochures. *See* JSOF #22.

1  travel passes from time to time, and he did not question its right to do that. JSOF #23. Mr. De Vera

2  explains that his experience was that United changed pass travel fees after the September 11, 2001

3  terrorist attacks, which was consistent with the *force majeure* clause in the "Company Regulations

4  10-3 Pass Travel." *Id.*

## II. THE COLLECTIVE BARGAINING AGREEMENTS

When he became a Union member, Mr. De Vera received a copy of the collective bargaining agreement ("CBA") between United and the Union. JSOF #2. Mr. De Vera received copies of subsequent CBAs as they were negotiated. JSOF #3.

The CBA between the Union and United that was in effect from 2005 to 2009 (the "CBA") contains several provisions relevant to the instant dispute. *See* CBA, Agenbroad Decl. Ex. D, ECF No. 55-3. Article XVI of the CBA governs United's travel pass program for employees and retirees. *See* JSOF #4. In relevant part, Article XVI provides the following:

> It is agreed that the pass transportation regulations as established by Company policy on the date of signing this Agreement will apply to employees covered by this Agreement and will not be substantially changed or discontinued during the term of this Agreement without first advising the Union of the reason therefor and affording the Union an opportunity to confer with the Company. Any improvements in pleasure pass benefits provided to other domestic non-management employee groups will be offered to employees covered by this Agreement. Additionally, Company seniority will be used for employees traveling on Company business to determine class of service and denied boarding in accordance with the departure management system and Company regulations.

*See* JSOF #4; CBA, Art. XVI, Agenbroad Decl. Ex. D, ECF No. 55-3 at 72. Mr. De Vera claims that he was not aware of this provision. *See* JSOF #4.

The CBA also contains provisions regarding retirement benefits. *See* JSOF #5. Article XXIV.E, entitled "Retiree Medical Benefits applicable to employees who retire on or after July 1, 2003," provides in relevant part that "[a]n employee (and his eligible dependents and survivors) will be eligible for retiree medical benefits if the employee, at retirement" is:

   a. Age 55 or older with ten (10) or more years of service, and
   b. Retires from active status or illness leave of absence, and
   c. Continues to make required contributions.

*See id.*; CBA, Art. XXIV.E.(1). Similarly, Article XXIV.F., entitled "Retiree Life Benefits applicable to employees who retire on or after July 1, 2003" provides that "[a]n employee (and his eligible dependents and survivors) will be eligible for retiree life benefits if the employee, at

retirement" is "[a]ge 55 or older with ten (10) or more years of service, and . . . [r]etires from active status of illness leave of absence." CBA, Art. XXIV.F.(1).

### III.  UNITED'S EARLY OUT PROGRAM

Around July 2008, United offered eligible employees, including Mr. De Vera, the opportunity to participate in an "Early Out Program." JSOF #6. Under the terms of the Early Out Program, eligible employees could separate voluntarily from United in exchange for severance payments and full retiree pass travel benefits. JSOF #6-7.[6]

According to Mr. De Vera, United offered an "Early Out Program" when it needed to downsize its workforce. De Vera Decl. ¶ 2. He decided to help out when the company offered benefits and severance pay in exchange for his leaving his job. *Id.* Mr. De Vera states that when he "took the early out in 2008, there were rumors that we were going to be bridged into retirement at age fifty [five][7] and that seems to be the case after I left the company as I was called an early out/retiree." *Id.* ¶ 3.

Mr. De Vera testified at his deposition that in or around July or August 2008, he received at least three documents regarding the terms and conditions of the Early Out Program. JSOF #6.

First, Mr. De Vera testified that he received a document entitled "Early Out Program for Mechanics and Related Employees." *Id.* This document begins as follows: "United Airlines has been in discussions with the Union concerning viable furlough mitigation programs. The Company is offering IBT-represented mechanics and related employees the Early Out Program described below." Agenbroad Decl. Ex. G, ECF No. 55-5 at 7. Under the heading "Benefits of the Early Out Program," the document states:

> **Pass Travel Benefit**: Commencing with the exit date, participants in the Early Out Program are entitled to retiree pass travel benefits on the same terms and subject to the same conditions, present and future, as retirees.

---

[6] Employees over the age of 55 with over 15 years of service apparently were entitled to receive retirement benefits, including life and medical insurance. JSOF #10. The document showing this is discussed *infra* in this Statement.

[7] The quoted sentence says "age fifty" but this appears to be a typographical error. *See, e.g.,* De Vera Decl. ¶ 4(referring to age 55); JSOF #5 (same); Opp'n at 3(same).

**Severance Payment**:  Participants in the Early Out Program will receive a severance payment of $500 per full year of service to the Company, up to a maximum of $12,500.  Severance payments will be divided into 12 equal installments to be paid on or about the first business day of each calendar month of 2009.  All payments will be subject to applicable taxation and withholding.

*Id.*; JSOF #7-8.

Second, Mr. De Vera testified that he received a document entitled "Mechanic and Related Employee (IBT Represented) Early Out Program." JSOF #6.  This document consists entirely of a chart that summarizes eligibility and benefits for two categories of Early Out Program participants: "Retirement Eligible with Early Out" and "Early Out Only." JSOF #10.  The contents of the chart are reproduced below:

**Mechanic and Related Employee (IBT Represented)**
**Early Out Program**

| Early Out Basic Qualification:  Age 45 with 15 years of service with United | | |
|---|---|---|
| | **Retirement Eligible with Early Out** | **Early Out Only** |
| **Eligibility** (Service & Age as of awarded effective date) | Minimum 15 years of service with the company AND age 55 or greater | Minimum 15 years of service with the company AND Age 45 or greater |
| **Early Out Severance Pay** | $500 for each year of service up to 25 years ($15,500 cap), Total pay is distributed in 12 equal installments beginning January 2009 | *Example:* 18 years of service equals $9000.  This would be paid out at $750 per month, before taxes for 12 months. |
| **Travel** | Retiree travel consistent with your retirement pkg | Travel Benefits equivalent to the retiree program |
| **Medical Insurance** | Retiree Medical as defined in your contract (Article XXIV. E) | No Insurance- Option to purchase COBRA for continued medical coverage for 18 months at the full cost of the plan |
| **Life Insurance** | $10,000 Retiree Life Insurance (Article XXIV. F) | No Life Insurance |
| **Pension** | Early Out does not change the pension plan.  Pensions are administered by the PBGC.  The employee will need to contact the Plan Administrator to determine payment options. | Early Out does not change the pension plan.  Pensions are administered by the PBGC.  The employee will need to contact each Plan Administrator to determine eligibility. |

| **Vacation** | All accrued and unused vacation will be paid in a lump sum | All accrued and unused vacation will be paid in a lump sum |

Complaint, ECF No. 1 at 11; Agenbroad Decl. Ex. F.

Third, Mr. De Vera stated that he received a document entitled "Mechanic and Related Employees Early Out Program, Frequently Asked Questions" with "Rev 07/2008" in the footer (the "July FAQ"). JSOF #6; *see* De Vera Dep. 30:23-31:17, Agenbroad Decl. Ex. C, ECF No. 55-2 at 17-18 (marking identified document as De Vera Depo. Ex. 6); Agenbroad Decl. ¶ 11, Ex. H (attaching De Vera Depo. Ex. 6, which bears the "Rev 07/2008" footer). The July FAQ provides answers to a number of questions, including the following:

**If the employee is eligible for retirement outside of the Early Out Program (i.e., 55 years old with minimum 10 years of service) may he/she elect the Early Out program?**

The employee may retire with passes and retiree medical, and be awarded the Early Out with pay provided under the terms of the Early Out Program only if he/she is 55 and has at least 15 years of service with United. **Note**: Normal retirement eligibility has not changed.

. . .

**Q. What is the current retiree pass policy?**

Passes are unlimited and include other travel programs such as United Express, retiree interline travel, companion travel, Discount 20, Positive Space travel, and emergency travel on United. Employees can find a complete listing of retiree pass benefits on SkyNet at TRAVEL > TRAVEL PROGRAMS > RETIREE

. . .

**Q. Is the "survivor" privilege included in the Early Out program pass travel benefit?**

Yes, participants in the Early Out program are entitled to the same retiree pass travel benefits on the same terms and subject to the same conditions, present and future, as retirees.

Agenbroad Decl. Ex. H, ECF No. 55-5 at 10-13. The July FAQ also provided telephone numbers for a "Reduction in Force Helpline" that could provide additional information on the Early Out Program. *Id.* at 13.

Mr. De Vera attaches another version of the Early Out Program FAQ that appears to be dated "10/2008" (the "October FAQ"). Opp'n Ex. C, ECF No. 63 at 15. The July and October FAQs are substantially similar, though the following questions differ from those quoted above:

C 12-5644 LB
ORDER 7

**19. What is the current retiree pass policy?**

The complete listing of retiree pass benefits may be accessed on SkyNet at Travel> Travel Programs> Retiree.

. . .

**21. Is the "survivor" privilege included in the Early Out program pass travel benefit?**

Participants in the Early Out program are entitled to the same retiree pass travel benefits on the same terms and subject to the same conditions and changes to policy as present and future retirees.

*Id.* at 17. In addition, the October FAQ included the following, which was not in the July FAQ:

**25. If I am not eligible for normal retirement, am I considered retired once I'm approved for the Early Out?**

No. You are a separated employee who is granted the benefit of retiree pass travel only.

*Id.* at 18.

## IV. MR. DE VERA'S PARTICIPATION IN THE EARLY OUT PROGRAM

In or about July 2008, Mr. De Vera applied to participate in the Early Out program. JSOF #13. Mr. De Vera rescinded his initial application but later reapplied and was accepted to participate in the Early Out Program, effective October 2008. JSOF #14. Mr. De Vera was 47 years old at the time. JSOF #15. Mr. De Vera accepted $9,250 in severance pay from United. JSOF #16.

With regard to travel passes, Mr. De Vera understood that he "would continue to have the same benefits as the [active employees]. In regards to the companion passes, [he] would receive an allotment of 24 passes per year to delegate to companions." De Vera Decl. ¶ 6.

With regard to other retirement benefits, when Mr. De Vera accepted the Early Out offer, there were rumors that those in the Early Out Program "were going to be bridged into retirement at age fifty [five] and that seem to be the case after [he] left the company as [he] was called an early out/retiree." De Vera Decl. ¶ 3. Mr. De Vera testified that he understands that his "pension plan was taken over by the PBGC" and that he has no "dispute over the retirement benefit to which [he] will be entitled under his pension plan." JSOF #17. "The company never denied when [Mr. De Vera] inquired by phone if [he] was going to be a retiree at 55 and asked for documents to that effect." De Vera Decl. ¶ 4. Nor did the company indicate that he would be an employee receiving retiree pass travel only. *Id.* ¶ 7.

## V. UNITED CHANGES THE TRAVEL PASS POLICIES

On October 1, 2010, as a result of the merger between United and Continental airlines, United created a uniform pass travel policy for employees and retirees of both airlines. JSOF #24. Under the new combined program, United retirees receive vacation passes that provide them and their designated family members or friends traveling with them the highest boarding priority based on years of service for eight flights each year. JSOF #25. Mr. De Vera states that before his flight benefits were changed, he had unlimited passes that were equivalent to the vacation passes. *See* JSOF #25.

Mr. De Vera testified at his deposition that he has attempted to book flights using his travel pass benefits with United fewer than five times since the program was changed in March 2012. JSOF #28. Mr. De Vera was unable to travel on his preferred flight option, allegedly due to his lower boarding priority on only one occasion. JSOF #29. In that case, Mr. De Vera was able to board an alternative flight the next day. *Id.* Mr. De Vera also testified that on one occasion, he used a vacation pass, which gave him the highest boarding priority, to travel to Hawaii and he has not used all of his vacation passes for the prior year. JSOF #30. On occasions when Mr. De Vera's daughter was unable to board a flight to or from LAX allegedly due to Mr. De Vera's lower boarding priority, she was able to board another flight the same or the next day. JSOF #31.

Mr. De Vera never would have "taken the early out had [United] made [him] aware of material facts that told [him] they could amend, modify or delete pass travel at any time, which they have after merging with Continental by lowering [his] boarding priority and deleting [his] companion passes." De Vera Decl. ¶ 9.

## VI. MR. DE VERA'S STATUS AS A RETIREE

On or after March 2012, Mr. De Vera was denied entry to the United facility where he formerly worked because of his status as a non-retiree. JSOF #33. Prior to March 2012, Mr. De Vera occasionally made social visits to the facility after he accepted the Early Out Program offer. JSOF #33. "After the merger, [Mr. De Vera] was told by [United] that he is not a retiree and that he was a retiree when it comes to flight benefits only. Prior to the merger, he was told he was an Early Out/Retiree. Recently, he found out he is considered a retiree per the company. It is this back and

forth you are a retiree and you are not a retiree that's confusing the plaintiff." JSOF #33.[8]

## VII. PROCEDURAL HISTORY

Mr. De Vera filed his complaint in state court on September 28, 2012, and served United on October 3, 2012. *See* Complaint, ECF No. 1 at 6, 9; Notice of Removal ¶ 2, ECF No. 1 at 2. United filed its answer on November 1, 2012, and removed the action to this court the next day on the basis of diversity jurisdiction. *See* ECF No. 1 at 19; Notice of Removal ¶¶ 7-11. The initial case management here was on February 28, 2013, *see* ECF No. 20, and the court issued its pretrial order on March 4, 2013 with deadlines that included a fact discovery completion of December 16, 2013 (later extended by the court pursuant to the parties' stipulation to December 23, 2013) and March 6, 2014 as the last hearing date for dispositive motions. *See* ECF No. 21 at 2; ECF No. 51. On April 22, 2013, the court issued a notice to Mr. De Vera regarding legal resources available to assist him. *See* ECF No. 25. The notice explained the legal standards applicable on summary judgment motions, provided access to the Northern District of California's *Handbook for Litigants Without a Lawyer*, and included information about the Bar Association of San Francisco Volunteer Legal Services Program's Legal Help Center. *Id.* The court had several case management and discovery conferences with the parties. *See, e.g.,* ECF Nos. 26, 32, 43.

United filed its summary judgment motion on December 30, 2013. *See* ECF Nos. 52-58. On January 6, 2014, the court issued another notice informing Mr. De Vera about the legal help desk and the legal standards for summary judgment motions. *See* ECF No. 59. The notice included a hyperlink to the district court's *Handbook for Litigants Without a Lawyer*. *Id.* The court also e-mailed a copy of the notice and order to Mr. De Vera. *See* ECF No. 60. On January 14, 2014, the

---

[8] Attached to his opposition brief, Mr. De Vera also submits other materials, including trade press articles (Exs. A, F, G), e-mails regarding changes to United's travel pass policies (Exs. D-E), an undated document bearing United's logo, titled Retiree Pleasure Travel Boarding Priorities (Ex. I), and a declaration and an e-mail from other Early Out program participants (ECF No. 63-1). Mr. De Vera does not establish that these documents are admissible. Nonetheless, assuming that they could be authenticated, the documents would change the court's ruling, and thus the court does not need to rule on their admissibility. Mr. De Vera also filed an e-mail and attachment that appears to be sent from his union representative. Opp'n Ex. H. United objects to the court's consideration of this document as inadmissible hearsay, and the court agrees that it is. Reply at n.1.

court granted Mr. De Vera's motion for an extension of time to file his summary judgment opposition papers. *See* ECF No. 62. Mr. De Vera filed his opposition on January 21, 2014 and United filed a timely reply on January 28. *See* Opp'n, ECF No. 63; Reply, ECF No. 65.

The court held a hearing on the summary judgment motion on March 6, 2014. *See* 3/6/14 Minute Order, ECF No. 67.

## ANALYSIS

United moves for summary judgment on Mr. De Vera claims for breach of contract and breach of fiduciary duty. *See* Motion, ECF No. 52.

**I. SUMMARY JUDGMENT**

A court should grant a motion for judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party, which must go beyond the pleadings and submit admissible evidence supporting its claims or defenses and showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Nissan Fire*,

1    210 F.3d at 1103; *Devereaux*, 263 F.3d at 1076.  If the non-moving party does not produce evidence

2    to show a genuine issue of material fact, the moving party is entitled to summary judgment.  *See*

3    *Celotex*, 477 U.S. at 323.

4         In ruling on a motion for summary judgment, inferences drawn from the underlying facts are

5    viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith*

6    *Radio Corp.*, 475 U.S. 574, 587 (1986).

## II. RAILWAY LABOR ACT PREEMPTION

8         United argues that Mr. De Vera's claims are preempted by the Railway Labor Act ("RLA"), 44

9    Stat. 577, as amended, 45 U.S.C. § 151 *et seq.*, because they would require the court to interpret the

10   CBA.  Motion at 16.  As the party asserting preemption, United must show that the RLA applies.

11   *See Jimeno v. Mobil Oil Corp.*, 66 F.3d 1514, 1526 n.6 (9th Cir. 1995) (party asserting preemption

12   defense bears the burden of proof).

13        The Railway Labor Act governs labor-management relations in the railroad and airline

14   industries.  *See* 45 U.S.C. §§ 181-88.  The RLA also applies to claims brought by a covered carrier's

15   retirees and former employees so long as their claims arise from a right that accrued during their

16   employment with the carrier.  *See Air Line Pilots Ass'n, Intern. v. Alaska Airlines, Inc.*, 735 F.2d

17   328, 328-29 (9th Cir. 1984).  Congress's purpose in passing the RLA was "to promote stability in

18   labor-management relations by providing a comprehensive framework for resolving labor disputes."

19   *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994).  To this end, the RLA created a "mandatory

20   arbitral mechanism for 'prompt and orderly settlement' of two classes of disputes [–]" major and

21   minor.  *Id.* (quoting 45 U.S.C. § 151a).

22        "Major" disputes relate to the formation of collective bargaining agreements, or efforts to obtain

23   them.  *Id.* at 256 (citing *Consol. Rail Corp. (Conrail) v. Ry. Labor Executives' Ass'n,* 491 U.S. 299,

24   305 (1989)).  "Major disputes must be settled through an extended bargaining process," though

25   federal district courts have jurisdiction to issue injunctions in aid of the bargaining process.  *Ass'n of*

26   *Flight Attendants v. Mesa Air Grp., Inc.*, 567 F.3d 1043, 1047 (9th Cir. 2009).

27        "Minor disputes, on the other hand, generally result from attempts to enforce existing contractual

28   obligations and rights," *id.*, and involve "interpretation or application of existing labor agreements."

*Norris*, 512 U.S. at 256.  A minor dispute cannot be filed initially in federal court.  *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1245 (9th Cir. 2009).  "[T]he RLA instead requires submission of such disputes to internal dispute-resolution processes and then to a division of the National Adjustment Board or an arbitration board selected by the parties."  *Id.* (citing 45 U.S.C. §§ 153, 184).  "Only after the grievance has been heard by the adjustment board does exclusive jurisdiction rest  with the federal court."  *Id.* (quoting *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 192 (9th Cir. 1983) (alterations omitted).

That said, the RLA does not preempt "causes of action to enforce rights that are independent of the CBA."  *Hawaiian Airlines*, 512 U.S. at 256.  When "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  *Id.* at 261, n. 8 (*quoting Livadas v. Bradshaw,* 512 U.S. 107, 124 (1994)).  As the Court explained:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement . . . .

*Id.* at 262 (quoting and adopting standard of *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 408–10 (1988)).  In such cases, the employees are free to bring their state law claims in the appropriate court.  *Id.* at 266.

### III.  MR. DE VERA'S BREACH OF CONTRACT CLAIM

Mr. De Vera alleges a breach of contract in his complaint.  *See* ECF No. 1 at 9.  He now categories it as a breach of an implied contract, claiming that he and United entered into an implied contract under which he would accept the terms of the early out program, and United would provide Mr. De Vera "the same boarding priority, upon his separation from United, as active employees."  JSOF #27.  This implied contract came from the documents he received relating to the "early out" program.  *Id.*  Mr. De Vera confirmed this at his deposition:

> Q.  Could you describe why you have described it as a breach of contract claim and then why you believe there's a breach of fiduciary duty, in your own words?
>
> A.  Breach of contract claim, because my boarding priority, which was the same as active employees, was changed. . . .

1  Q. With regard to your breach of contract claim, are you saying there was an oral contract or a written contract?

2  A. An implied contract because when it says, "same as retiree" and I look at the retiree with less than 25 years, it was the same as active employees.

3  Q. The contract that you're alleging was breached was the agreement under which you took the early out?

4  A. Correct.

De Vera Dep. 88:5-89:15, ECF No. 55-2 at 49-50. As set forth in the Statement, these documents stated that "participants in the Early Out Program are entitled to retiree pass travel benefits on the same terms and subject to the same conditions, present and future, as retirees." *See* JSOF #7-8; Agenbroad Decl. Ex. G, ECF No. 55-5 at 7. Mr. De Vera also states that the travel benefits never changed during his entire career with United so he never expected it to be changed to his disadvantage in the future. *See* JSOF #8.

United argues that the contract claim is preempted because it is a minor dispute that would require the court to interpret the CBA. Motion at 18. Mr. De Vera counters that the contract at issue is his early out agreement with United, the flight benefit in that agreement is not part of the collective bargaining agreement, and it thus is not preempted. *See* Opp'n at 9. The court concludes that his contract claims are preempted because they would require the court to evaluate the provisions in the CBA regarding eligibility for the travel benefits. Mr. De Vera's argument about his eligibility for retirement travel benefits is premised on his argument that United improperly changed benefits for retirees, which thus affected his rights to the same travel benefit as part of the "Early Out" program. Resolution of that issue would turn on whether the CBA permitted the changes for retirees and the CBA provisions regarding travel pass benefits. *See* JSOF #4.

*Ertle v. Contintental Airlines, Inc.*, 136 F.3d 690, 694 (10th Cir. 1998) supports this conclusion. There, former union-represented Continental Airlines flight attendants sued for breach of their early-out agreements that included flight benefits after Contintental subsequently cut back flight service to Denver significantly. *Id.* Continental's alleged promise under the agreements was that it would "maintain a 'roughly constant' level of service to and from Denver." *Id.* The alleged breach was that the service cutbacks deprived them of the benefit of their bargains. *Id.* The court suggested that

a contract that could be resolved without interpretation or application of the CBA would not be preempted by the RLA. *Id.* It concluded ultimately that the early out agreements were ambiguous about the level of service Continental promised to provide and that the RLA did preempt the contract claims because the court would have to interpret CBA provisions addressing Continental's right to alter the level of service provided. *Id.*

Thus, the RLA preempts the dispute here, which must be submitted through the CBA's grievance procedures and adjudicated under the RLA's mechanisms, meaning, before the System Board.[9] *See Santiago v. United Air Lines, Inc.*, No. 11 C 9109, 2013 WL 4501024, at *5-8 (N.D. Ill. Aug. 22, 2013) (denying United's motion for summary judgment and stating intent to grant summary judgment to *pro se* plaintiff, a retired United employee who sought to compel United to arbitrate her claim under the RLA that changes to employee pass travel policy violated the applicable CBA); *see also* CBA, Art. XVIII (establishing a system board to resolve minor disputes).[10]

Even if the parties' interaction here was not subject to the RLA, the court would not find any breach

---

[9] At the hearing, the court discussed with the parties what this meant. United acknowledged that under sections XXIV.E & F. (discussed above), any issues about retirement benefits must be raised through the collective bargaining dispute provisions. It is also true that United's travel policy allows it to modify, change, or delete travel benefits (including the retiree travel benefits that Mr. De Vera is entitled to), and requires only notice to the Union. *See* CBA Art. XXIV. That notice is what allows the Union – if it chooses – to engage in the bargaining process. The court appreciates Mr. De Vera's argument that this process does not provide him much of a remedy.

[10] United also argues that the court would have to interpret other retirement benefits provisions in the CBA. *See, e.g.,* Reply at 3-4 (citing CBA provisions). Mr. De Vera did say in the JSOF that "[i]t is this back and forth that you are a retiree and that you are not a retiree that's confusing the plaintiff." JSOF #33. He also said that the chart in the Statement that summarizes "early out" benefits is not clear, and he was confused about his status as a retiree. JSOF #10-11 But he does not argue that United is liable for breach of contract based on failure to provide him with retirement benefits so the court would not have to consider those provisions. *See* JSOF # 27. If there were other issues about his eligibility for retirement benefits, they would be considered in light of the CBA and thus would be preempted under the RLA.

1  of a contract or an implied contract that the travel benefits could not be changed.[11] The documents or
2  course of conduct do not establish a contract or implied contract that the travel benefits were not subject
3  to change. The documents expressly state that participants receive travel benefits "on the same terms
4  and subject to the same conditions, past and future, as retirees." JSOF #8. The pass travel policy also
5  reflects that United "reserved the right to amend" the Series 10 travel policy. *See supra* Statement
6  (setting forth full policy). Any argument that the contract violates the CBA (again) would be an issue
7  subject to the RLA's dispute provisions.

8  Mr. De Vera makes the argument that United "was sued and lost the verdict of pass travel benefit
9  in lawsuit that began in 1996. In that verdict, the jury awarded $3.3 million in compensation for losing
10  the flight benefit to six former employees." Opp'n at 8 (citation omitted). The case he cites is *Osband
11  v. United Airlines, Inc.*, 981 P.2d 616 (Colo. App. 1998), which addresses preemption only in the
12  context of the Federal Aviation Administration Authorization Act, 49 U.S.C. § 41713(b)(1) (1994), and
13  concerns "substantial changes" to employee travel benefits programs in 1994.

### IV. MR. DE VERA'S BREACH OF FIDUCIARY DUTY CLAIM

15  Mr. De Vera also claims that United failed to disclose material facts concerning the 2008 Early Out
16  program, specifically, its right to amend the flight benefits and how he would be treated as an "early
17  out" as opposed to a retiree. Opposition at 6.[12] He also argues that United "was in merger talks with
18  Continental back in 2008 and knew that their retirees had a very different pass travel benefits than

---

[11] United makes broad arguments that breach of contract claims between an employer and an employee are always preempted as a matter of law because any such contract would be superseded by any conflicting terms of a CBA. *See* Motion at 19. Given that Mr. De Vera is representing himself, the court does not reach the arguments in this order because the one-sided briefing does not allow a full illumination of any issues. *See Locke v. U.S. Airways, Inc.*, No. 11-11350-RWZ, 2013 WL 5441725 (D. Mass. Sept. 27, 2013) (holding that an employee's termination was governed not by the CBA but instead by a last-chance agreement that the employer and employee signed).

[12] On this record, and for the reasons stated in footnote 10, the court cannot decide the preemption issue. *See Ertle v. Continental Airlines, Inc.*, 136 F.3d at 694-95 (holding state law fraudulent concealment claim not preempted by RLA because it was based on failure to disclosure information, which did not require interpretation or application of the CBA). The court also does not reach United's argument that California Civil Procedure Code § 338(d)'s three-year statute of limitations bars the claim.

1  United retirees pass travel benefits hence the language 'same as retirees pass travel benefits present and
2  future.'"[13]  Opp'n at 6.

3  Under California law, "[t]he elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach." *Knox v. Dean*, 205 Cal. App. 4th 417, 432 (2012) (quoting *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1988)).  California recognizes a similar tort of constructive fraud, which permits a plaintiff to recover for "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him." Cal. Civ. Code § 1573.

"[B]efore a person can be charged with a fiduciary obligation, he must either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008); *see Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal. 3d 197, 221 (1983) (refusing to recognize fiduciary relationship between commercial sellers and retail purchasers of breakfast cereals despite sellers' superior bargaining power and better access to information).

Mr. De Vera does not show the existence of a fiduciary or confidential relationship between him and United.  For that reason, his claim fails.

## CONCLUSION

For the reasons discussed, the court **GRANTS** United's motion for summary judgment.

This disposes of ECF No. 52.

**IT IS SO ORDERED.**

Dated: March 7, 2014

LAUREL BEELER
United States Magistrate Judge

---

[13]  This quotation appears to come from the document entitled "Early Out Program for Mechanics and Related Employees" under the heading "Pass Travel Benefit."